DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Smith appeals his conviction for felonious assault with a deadly weapon. He contends the trial court erred in refusing to instruct the jury on the lesser included offense of simple assault because the jury could have reasonably found that the scissors he used to stab the victim did not constitute a "deadly weapon." He argues the evidence at trial reasonably supports the finding that the scissors were not long or sharp enough to penetrate further than just underneath the skin and thus not capable of causing death. Our review of the record shows that there was no evidence introduced at trial concerning the type, size, length, or sharpness of the "aluminum blade" scissors and no other evidence showing that the scissors were in fact capable of inflicting death. The *Page 2 
only wound suffered by the victim was one centimeter in length and "appeared" to go into "subcutaneous" structures, i.e. "under the skin." Viewing this evidence in a light most favorable to Smith, we believe the jury could have reasonably found against the State on the element of "deadly weapon," i.e., the jury could have reasonably concluded that the scissors were not long or sharp enough to cause death. Because the evidence reasonably supports an acquittal on the felonious assault charge but a conviction on the lesser included offense of assault, the trial court erred in failing to give a jury instruction on assault.
 I. Statement of the Facts {¶ 2} A grand jury indicted Smith on one count of aggravated arson, in violation of R.C. 2923.02(A), one count of attempted murder, in violation of R.C. 2909.02(A), and one count of felonious assault, in violation of R.C. 2903.11(A)(2). After Smith pled not guilty, the matter proceeded to a jury trial, which produced the following evidence.
 {¶ 3} Michael and Janeen Smith got a divorce in early May 2006. Under the terms of the divorce, they were to sell their house and split the proceeds; until then, Smith continued to live there. Janeen testified that on May 25, 2006, she stopped by the house to clean it after a potential buyer had made an offer on the house. She testified that she and Smith sat on the back porch and started talking and eventually started drinking. During their conversation, she told him that she was in love with another man.
 {¶ 4} Janeen testified that after several hours of drinking together, Smith asked her to go across the street to buy him some cigarettes. When she *Page 3 
returned, she sat down at a table on the back porch; Smith, who had previously had back surgery, was sitting in his wheel chair on the other side of the table. Janeen testified that Smith picked up a pair of scissors that had been on the table, bent forward, and stabbed her in the right chest. He then tried to stab her again, but she shoved the table to block him and went into the house. She told their son what happened and called her mother, who arrived within minutes. She then called 911. Janeen testified that while she was on the phone, Smith came inside the house, walked down a hallway, and after a few minutes, walked back outside. Janeen and her mother followed him. As they were standing outside, their son ran out of the house screaming that the house was on fire. Janeen testified that she went to a neighbor's house, and officers responded to the scene. About five hours later, her mother drove her to the hospital, where physicians used a glue called "Durmabond" to seal the wound. She testified that by the time she arrived at the hospital, the bleeding had stopped.
 {¶ 5} During her direct examination, Janeen gave the following description of the scissors Smith used in the attack:
A. Uh, they just [sic] a pair of scissors I mean, you know, had a little plastic on the blade, on the top.
Q. Uh/huh.
A. Aluminum blade.
Q. Uh/huh.
A. And plastic on the handles.
 Q. Okay. So Aluminum on the bottom of the blade? *Page 4 
A. Yes.
 {¶ 6} Josh Hobbes, an investigator for the State Fire Marshall's Office, testified that in his opinion the temperature of the fire was capable of melting aluminum. Sgt. Brian Cooper with the Athens County Sheriffs Office testified that the scissors were never recovered. Sgt. Cooper also testified:
Q. Sgt. Cooper earlier in Ms. Smith testimony [sic], she testified about scissors, about them being aluminum, plastic on one side, blunt ended. You heard that testimony is that right?
A. That's correct sir.
Q. Based upon your training and experience do you have an opinion as to whether or not scissors like that can be used as a weapon?
A. Yes they can be.
Q. Can they inflict death?
Attorney: Continuing objection your honor.
Judge: So noted. Overruled.
 {¶ 7} A review of the transcript shows that after the trial court overruled defense counsel's objection, Sgt. Cooper never answered the prosecutor's question concerning whether scissors like the ones Janeen had described could inflict death, and the prosecutor moved on to a different question.
 {¶ 8} Finally, the State introduced the blood-stained shirt Janeen was wearing that night, as well as a picture depicting her injury. The parties also stipulated to her hospital medical records, in which the physician noted:
 She has a single wound to the right breast, just lateral to the sternum in the area of the 5th intercostal space. * * * There is no bleeding. The wound is 1 cm in length, appears to go into the subcutaneous *Page 5 
structures but there is no surrounding redness or swelling and there is no bleeding.
 {¶ 9} The jury found Smith guilty of felonious assault in violation of R.C. 2903.11(A)(2), but not guilty of attempted murder and aggravated arson. The trial court sentenced Smith to eight years in prison. Smith appeals and presents one assignment of error:
 The trial court erred by denying Michael Smith's request for a jury instruction on the lesser included offense of assault in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
 II. Jury Instructions on Lesser Included Offense {¶ 10} An offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v.Deem (1988), 40 Ohio St.3d 205, 209, 533 N.E.2d 294.
 {¶ 11} Smith was charged with felonious assault under R.C.2903.11(A)(2), which states: "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." "Deadly weapon" means "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C.2923.11(A). R.C. 2903.13 sets forth the offense of assault and states: "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Assault, as described in *Page 6 
R.C. 2903.13(A), is a lesser included offense of felonious assault as set forth in R.C. 2903.11(A)(2) because the elements of the two crimes are the same except that felonious assault has the additional element that an accused used "a deadly weapon or dangerous ordnance." SeeState v. Booth, Lawrence App. No. 02CA30, 2003-Ohio-2064, at ¶ 13, citing State v. Gunther (1998), 125 Ohio App.3d 226, 239, 708 N.E.2d 242
and State v. Smith (1990), 68 Ohio App.3d 692, 697, 589 N.E.2d 454.
 {¶ 12} A charge on a lesser included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense.State v. Thomas (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the trial court must view the evidence in the light most favorable to the defendant. State v.Campbell (1994), 69 Ohio St.3d 38, 47-48, 630 N.E.2d 339.
 {¶ 13} Generally, the wording and form of a jury instruction are entrusted to the sound discretion of the trial court. However, the court must give a charge on relevant questions of law if the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction. See, State v. McCarthy (1992), 65 Ohio St.3d 589,593, and Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591.
 {¶ 14} Smith contends the evidence presented at trial reasonably supports both an acquittal on the offense of felonious assault and conviction on the lesser included offense of assault because the jury could have reasonably found that *Page 7 
the scissors did not constitute a "deadly weapon." Specifically, he contends the jury could have reasonably concluded that the scissors were not capable of inflicting death because the only evidence introduced at trial showed that the scissors had an "aluminum blade" and caused a "subcutaneous" wound one centimeter in length. He argues that there was no other evidence to show that the scissors were sufficiently long or sharp to penetrate anything more than immediately beneath the skin. He also argues that our decision in State v. Hesler (1985), Adams App. No. 421 is distinguishable. In Hesler, the defendant argued that the trial court erred in refusing to give a jury instruction on the lesser included offense of assault because the jury could have reasonably found that the knife used in the assault was not a "deadly weapon." We rejected Hesler's contention because reasonable minds could not fail to conclude that the knife, which had a four-inch blade, was a deadly weapon. Smith contends that in the present case, unlike Hesler, there is no evidence concerning the size or sharpness of the scissors or the length of the blade.
 {¶ 15} The State contends that Hesler is dispositive and that the jury in this case could not have reasonably found that the scissors constituted anything other than a deadly weapon because the evidence showed that Smith stabbed the victim in the chest with a pair of aluminum blade scissors with sufficient force to pierce beneath her skin and bloody her shirt.
 {¶ 16} After reviewing the evidence presented at trial in a light most favorable to Smith, we believe the evidence reasonably supports an acquittal on the felonious assault charge and a conviction on assault because the jury could *Page 8 
have reasonably found that the scissors did not constitute a "deadly weapon." In denying Smith's request to instruct the jury on the offense of assault, the trial court reasoned that "I assume if that would [have] hit the aorta or if it hit a vein or if it hit the eye it would [have] killed somebody." We agree with the trial court's reasoning that a jury could have reasonably found that the scissors could cause death. However, under the facts and circumstances of this case, i.e., the limited description of the scissors and the nature of the victim's wound, we believe the jury could have also reasonably concluded that the State failed to prove beyond a reasonable doubt that the scissors Smith used in the assault were in fact capable of inflicting death.
 {¶ 17} The scissors were never recovered. The only description of the scissors came from Janeen, who described them as "just a pair of scissors" with an "aluminum blade" and "plastic on the handles." There was no further testimony concerning the type, size, length, or sharpness of the scissors. Specifically, unlike the testimony concerning the knife at issue in Hesler, there was no description of the length of the scissors' blades. As Smith points out, there are various types of scissors that could fit Janeen's description; yet not all of them would be capable of inflicting death. For example, the jury could have reasonably concluded that "just a pair of scissors" meant ordinary office or household scissors, i.e., scissors with sharp, pointed blades approximately three to five inches long; and the jurors could have reasonably inferred from their daily experience and common sense that these scissors were capable of inflicting death. However, they also could have reasonably concluded that a pair of *Page 9 
scissors matching Janeen's description, such as craft or scrapbooking scissors or any other kind of scissors with short or blunt-ended blades, could penetrate the skin, but not deep enough to cause death. These reasonable alternatives presented a choice that should have been left to the jurors. Murphy, supra, at 590.
 {¶ 18} Moreover, there was no other evidence showing that the scissors were capable of inflicting death. Contrary to the State's contention, Sgt. Cooper never gave an opinion concerning whether the scissors Janeen described could inflict death; rather, he only testified that they could be used as a weapon, but never answered the prosecutor's question concerning whether they could inflict death. Smith made no statements or admissions during the attack, i.e., statements reflecting an intent to kill Janeen, from which the jury could have reasonably inferred his belief that the scissors were in fact capable of inflicting death.
 {¶ 19} Finally, the evidence concerning Janeen's wound fails to support the finding that the jury could have only reasonably concluded that the scissors constituted a deadly weapon. The evidence introduced at trial, including Janeen's blood-stained shirt, shows that she suffered a fair amount of bleeding before she arrived at the hospital. However, the stipulated medical records show that her one centimeter in length wound only "appears to go into subcutaneous structures," and the doctors used Durmabond to seal the wound. The term "subcutaneous" means "under the skin." See Merriam-Webster's Medical Desk Dictionary 1996 Ed. (777). Thus, it is undisputed that Janeen only suffered a *Page 10 
wound that appeared to pierce beneath her skin and that it was not deep enough to require stitches. Because there is no other evidence concerning the depth of her wound which would demonstrate the length of the scissors' blades, the jury could have reasonable inferred that they were not sufficiently long or sharp to cause an injury beyond immediately under the skin.
 {¶ 20} Given the facts and circumstances of this case, we believe the jury could have reasonably concluded that the scissors were not in fact capable of inflicting death, and thus, could have reasonably acquitted Smith of felonious assault, but convicted him of assault. Therefore, the trial court erred as a matter of law in failing to give a jury instruction on assault. We sustain Smith's sole assignment of error.
 JUDGMENT REVERSED AND CAUSE REMANDED. *Page 11 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. Kline, J.: Concur in Judgment Opinion.
 *Page 1